IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TERRY MELVIN ELLIS, | § |
| Plaintiff, | § § § |
| v. | § Civil Action No. 3:06-CV-283-K |
| LESLIE COTTEN, | § § § |
| Defendant. | § |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Court's Order, entered February 13, 2006, this case has been referred to the United States Magistrate Judge for pretrial management. Before the Court is Defendant's First Motion for Summary Judgment (doc. 21) and Defendant's Motion for Summary Judgment (doc. 23). Because Defendant's Motion for Summary Judgment supercedes Defendant's First Motion for Summary Judgment, the Court recommends that Defendant's First Motion for Summary Judgment (doc. 21) be **DENIED** as moot.

Plaintiff filed a response to Defendant's Motion for Summary Judgment on May 28, 2008 (doc. 36) and Defendant replied on June 9, 2008 (doc. 42). After considering the arguments, the Court finds that Defendant's Motion for Summary Judgment (doc. 23) should be **GRANTED**.

## BACKGROUND

On February 13, 2006, Plaintiff brought this action pursuant to 42 U.S.C. § 1983 (2006), claiming that Defendant violated his civil rights when Defendant ordered medical personnel to obtain Plaintiff's blood and urine specimens without Plaintiff's consent and in a forcible manner. (Pl.'s Compl. at 2.) He also alleges that certain property was wrongly confiscated. (*Id.*) These

1

allegations stem from an incident that occurred on September 30, 2004. On that day, Plaintiff was arrested for evading arrest. (*Id.*)[1] Officer Scott Wiley ("Officer Wiley") observed Plaintiff driving a red Ford pickup ("pickup") seventy-seven miles per hour, exceeding the posted speed limit of fifty-five miles per hour. (Def.'s Mot. Summ. J. at App. 1–2.) Officer Wiley activated the emergency lights on his patrol car and attempted to overtake Plaintiff's pickup. (*Id.*) Plaintiff failed to yield, and instead accelerated to approximately 100 miles per hour. (*Id.*) Officer Wiley then turned on the siren in the patrol car and informed dispatch of the pursuit. (*Id.*) Plaintiff continued driving at a high rate of speed, drove across the center line into oncoming traffic, and forced two cars to pull off the road and into a ditch. (*Id.* at App. 2.) The Coriscana Police Department set up a spike strip, which Plaintiff's pickup crossed, puncturing both front tires. (*Id.*) Plaintiff continued driving at a high rate of speed, ran a stop sign, and ran a red light. (*Id.*) Plaintiff continued driving after the pickup's left front tire disintegrated and its rim came off. (*Id.*) He then changed directions by driving across a yard. (*Id.*) Plaintiff eventually turned onto a dead-end street. (*Id.*) At this point, Plaintiff attempted to cross a cow pasture, but Plaintiff ran into a ditch and the pickup was disabled. (*Id.*)

Several police officers, including Officer Wiley drew their weapons and ordered Plaintiff out of the pickup. (*Id.* at App. 3.) Plaintiff did not comply with this order and refused to unlock the doors to the pickup. (*Id.*) Corsicana Police Officer Kelly Paul used his baton to break the driver's side window and unlock the door. (*Id.*) Plaintiff was removed from his vehicle and arrested for

---

1. Plaintiff has not provided any description of the events leading up to the arrest. Defendants, on the other hand, provided several affidavits from police officers involved in Plaintiff arrest, describing what occurred. Because Plaintiff has not attempted to contradict these affidavits, there is no genuine issue of material fact regarding what happened prior to the arrest.

Evading Arrest with a Vehicle and Reckless Driving. (*Id.*) Officer Jeff Harbuck ("Officer Harbuck") and Officer Wiley searched the pickup for weapons and narcotics. (*Id.* at App. 8–9.) Plaintiff's pickup was later impounded. (*Id.* at App. 3.)

Officer Wiley stated that Plaintiff was "dazed and disoriented and began screaming at the officers." (*Id.* at App. 3.) The officers called a Corsicana Fire Department ambulance to examine Plaintiff for his own safety. (*Id.*) The paramedics brought Plaintiff to Navarro Regional Hospital to be examined by a doctor. (*Id.*) Officer Wiley read Plaintiff the Miranda warning. (*Id.*) Both Officer Wiley and Officer Clint Andrews ("Officer Andrews") accompanied Plaintiff to the hospital. (*Id.* at App. 3, 6) Officer Andrews helped the paramedics put Plaintiff onto the gurney. (*Id.* at App. 6.) At that point, Plaintiff spoke loudly and tried to hit and kick the paramedics. (*Id.*) Officer Andrews then put black nylon leg restraints on Plaintiff for the safety of the officers, paramedics, and Plaintiff. (*Id.*) Plaintiff attempted to kick free from Officer Andrew. (*Id.*)

While at the hospital, Officer Andrews removed the nylon leg restraints and replaced them with leg cuffs. (*Id.*) Plaintiffs hands were cuffed to the gurney. (*Id.*) Plaintiff cursed at the medical staff while they treated him. (*Id.* at App. 6–7.) At the hospital, Officer Wiley heard Plaintiff tell Officer Harbuck that Plaintiff had "shot up" methamphetamine three times since leaving Bosque County en route to Navarro County. (*Id.* at App. 3, 8–9.) Officer Andrews heard Plaintiff tell the medical staff that they would have to insert a needle in another location because he had "collapsed most of his veins by shooting up narcotics for so long." (*Id.* at App. 6–7.) Officer Andrews also heard Plaintiff say that he had not urinated in several days, at which point, the medical staff inserted a catheter into Plaintiff. (*Id.*)

Plaintiff claims that when he refused to consent to giving blood and urine specimens, he was

handcuffed to a "gurney" and restrained by several officers. (Pl.'s Resp. Magistrate Judge's Supp. Questionnaire to Pl. at 3.) After being restrained, a catheter was inserted into his penis and he was given two shots to calm him down. (*Id.*) Plaintiff then claims that he "passed out" and blood was drawn and urine was extracted. (*Id.*) Plaintiff alleges that these actions were taken at the direction of the Deputy Sheriffs. (*Id.*)

Plaintiff does not know why his blood and urine specimens were taken. (*Id.*) He does not know the results of any testing done on Plaintiff's blood and urine specimens. (Pl.'s Resp. Magistrate Judge's Questionnaire at 2.) No results of any such testing were used against Plaintiff at any point during his criminal trial. (*Id.*) Plaintiff claims that he was "very disoriented at that time due to the 'mace' spray" used by the Sheriff's Deputies. (*Id.* at 4.)

Plaintiff claims that over $900 worth of merchandise was confiscated at the time of his arrest. (Pl.'s Compl. at 3.) The merchandise included: "(1) 25 pairs of wrangler jeans - $19.95 a pair; (2) 10 dress shirts - $12.95 each; (3) 10 designer T-shirts - $8.00 each; (4) 1 camouflage shirt - $24.95 each; (5) 1 pair camouflage pants - $26.95; (6) 10 packs boxer briefs - $6.49 a pack; (7) 20 pairs of socks - $1.00 a pair; (8) 1 belt - $12.00; (9) 1 belt - $8.00; (10) 1 pair of hush puppies . . . - $24.95; (11) 1 pair of tennis shoes - $24.95. (Pl.'s Resp. Magistrate Judge's Supp. Questionnaire to Pl. at 4.) In addition to these items, Plaintiff also claims that the tools in his tool bag were also taken. (Pl.'s Resp. Mot. Summ. J. at 4.) Plaintiff asserts that this property was lost by Defendant. (*Id.*)

## STANDARD OF REVIEW

The Court should only grant summary judgment if there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists "if the evidence is such

that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court views the facts in the light most favorable to the non-moving party. *Whittaker v. BellSouth Telecomm., Inc.*, 206 F.3d 532, 534 (5th Cir. 2000). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If the non-movant bears the burden of proof at trial, the summary judgment movant may satisfy his burden by pointing to the absence of evidence supporting the non-movant's case. *Whittaker*, 206 F.3d at 534. At this point, the non-movant must show that summary judgment is not appropriate by going beyond the pleadings to demonstrate "specific facts showing that there is a genuine issue for trial." *Id.* Mere conclusory allegations or denials unsupported by specific facts are not enough. *Id.* There must be evidence giving rise to reasonable inferences that support the non-moving party's position. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). The material facts in this case are not disputed.

Since Plaintiff in this case is proceeding *pro se*, the Court must construe the allegations in the complaint liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam); *Sec. & Exch. Comm'n v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam). The Court has an obligation to construe a *pro se* plaintiff's brief more permissively and to make more allowances. *AMX, Int'l, Inc.*, 7 F.3d at 75. "[P]*ro se* litigant[s] [are] subject to less stringent standards than [those] represented by counsel." *Id.* (citing *Hughes v. Rowe*, 449 U.S. at 9).

## ANALYSIS

Plaintiff argues that Defendant violated 42 U.S.C. § 1983 by personally ordering medical

staff to forcibly take blood and urine specimens without his consent. He also claims that Defendant lost over $900 in merchandise, which was confiscated from his pickup truck. Section 1983 provides a federal cause of action for a violation of an individual's civil rights. *See Gomez v. Toledo*, 446 U.S. 635, 638–40 (1980). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). To establish a § 1983 claim, the plaintiff must show (1) "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" (2) by any person acting under the color of state law. *Gomez*, 446 U.S. at 638. In this case, Plaintiff alleges that Defendant violated his Fourth Amendment right. It is undisputed that the second part of this test is satisfied. Defendant is the Sheriff of Navarro County and was acting under the color of state law.

Supervisory officials cannot be vicariously liable for a § 1983 cause of action under the doctrine of respondeat superior. *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983) (per curiam); *see also Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987). In other words, a supervisor cannot be liable solely based on the actions of his subordinates. *Thompkins*, 828 F.2d at 303–04. In order for a supervisory official to be liable under § 1983, the supervisor must either be personally involved in the constitutional violation, or there must be a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Thompkins*, 828 F.2d at 304. Plaintiff appears to allege that Defendant, by ordering both actions, was personally involved in the taking of blood and urine specimens and restraining him. Plaintiff does not contend Defendant was personally involved losing his personal property.

**A. Defendant's Personal Involvement**

In response to Plaintiff's allegations that Defendant violated Plaintiff's rights though his personal involvement, Defendant argues that he is protected by qualified immunity for his actions. Qualified immunity protects government officials who are performing discretionary functions from liability for damages. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The privilege of qualified immunity shields an officer from suit, rather than providing him with a defense to liability. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Determining whether a defendant is entitled to qualified immunity is analyzed under a two-part test. *Simmons v. City of Paris, Tex.*, 378 F.3d 476, 479 (5th Cir. 2004). *See also Saucier*, 533 U.S. at 201. If the defendant succeeds on either part of the test, qualified immunity exists. *See Simmons*, 378 F.3d at 479. The first part of the test considers whether the facts alleged, viewed in the light most favorable to the plaintiff, violate a constitutional right. *Saucier*, 533 U.S. at 201. If a constitutional right was violated, the court determines if that right was clearly established at the time of defendant's unlawful conduct. *Id.*

### 1. Constitutional Violation

Plaintiff appears to claim that Defendant ordered the violation of his constitutional rights in two ways. First, Plaintiff claims that he was subject to an unlawful search though the taking of his blood and urine. Plaintiff next appears to argue that he was subject to excessive force. The Court considers each of these arguments.

#### a. Unlawful Search and Seizure

Plaintiff alleges that he was unlawfully seized when he was handcuffed to the gurney and unlawfully searched through the compulsory taking of blood and urine specimens in violation of the Fourth Amendment. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be

violated . . ." U.S. CONST. amend IV. The Supreme Court held that such compulsory testing is subject to the constraints of the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966) (noting that compulsory blood testing procedures "plainly constitute searches of 'persons,' and depend antecedently upon seizures of 'persons,' within the meaning of that Amendment"); *United States v. Edmo*, 140 F.3d 1289, 1292 (9th Cir. 1998) (applying *Schmerber* to compulsory urine testing). The Fourth Amendment, however, does not prohibit all searches and seizures, only those that are unreasonable. *Skinner v. Railway Labor Executives' Assoc.*, 489 U.S. 602, 617 (1989). The Supreme Court has held that reasonableness "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Id.* Generally, for a search or seizure to be reasonable, there must be a warrant issued, which is based upon probable cause. *Id.*

An exception to this general rule exists when an officer is confronted with an emergency where evidence might be destroyed while a warrant is obtained.[2] In *Schmerber*, the Supreme Court found that such an emergency exists when a plaintiff was arrested for an intoxication offense. *Schmerber*, 384 U.S. at 770. In that case, a police officer instructed a doctor to extract a blood specimen from a drunk driving suspect without his consent. *Id.* at 758, 769. In upholding the reasonableness of the police officer's actions, the Supreme Court considered three factors. *Id.* at 770–72. First, the Supreme Court determined that in circumstances where evidence might be destroyed while a warrant is obtained, a seizure is reasonable if probable cause exists. *Id.* at 770. Probable cause exists when "the facts and circumstances known to the arresting officer are sufficient

---

2. In support of Plaintiff's argument that a warrant or consent is required, he relies on *Smith v. State*, 557 S.W.2d.299 (Tex. Crim. App. 1997). However, in that case no exigent circumstances existed to justify an exception to the warrant or consent requirement. Because the Supreme Court has held that this exception is appropriate when a plaintiff is suspected of committing an intoxication offense, the Court finds that this case is not applicable.

to warrant a prudent person to believe that the person arrested has committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). In *Schmerber*, the police officer testified that the plaintiff's eyes were bloodshot, watery, and glassy in appearance. *Schmerber*, 384 U.S. at 769. This was sufficient probable cause to extract blood from the plaintiff without his consent. *Id.*

The Supreme Court next considered whether the test used to measure the plaintiff's blood-alcohol level was reasonable. *Id.* at 771. Not only are blood tests "highly effective means of determining of the degree to which a person in under the influence . . . ," but such tests are common place and routine. *Id.* Accordingly, the extraction of blood is a reasonable method to obtain evidence when there is probable cause to believe an intoxication offense was committed. Likewise, the Supreme Court also considered whether the manner in which the test is performed was reasonable. *Id.* In *Schmerber*, the blood test was taken by a doctor in a hospital in accordance with proper medical practices. *Id.* The Ninth Circuit has extended this principle to compulsory urine testing as well. *United States v. Edmo*, 140 F.3d 1289, 1292 (9th Cir. 1998)

Accepting Plaintiff's allegations as true, this case is remarkably similar to *Schmerber*. Plaintiff alleges that Defendant ordered the medical staff to exact blood and urine specimens without his consent. Plaintiff argues that probable cause did not exist because the police officers did not charge him with an intoxication offense.[3] However, it is inconsequential that the officers decided not to charge Plaintiff with an intoxication offense. The seizure of evidence based on exigent

---

3. Plaintiff apparently relies on § 724.012(b) of the Texas Transportation Code in support of his argument that a person must be arrested in order got an officer to obtain a blood specimen without a warrant. However, § 724.012(b) is a statutory requirement. *McKenna v. State*, 671 S.W.2d 138, 139 (Tex. App. - Houston [1st Dist.] 1984). Any violation of that provision does not result in a violation of Plaintiff's constitutional rights. *See id.* Instead, in determining if a plaintiff's constitutional rights are violated by the non-consensual, warrantless extraction of blood, the Court is guided by *Schmerber*. *Id.*

9

circumstances does not have to be accompanied by an arrest. *U.S. v. Chapel*, 55 F.3d 1416 (9th Cir. 1995) (citing *Cupp v. Murphy*, 412 U.S. 291 (1983)). Instead, the court considers whether the requirements set forth by the Supreme Court in *Schmerber* are satisfied. *Id.* The reasonableness of the test chosen and the manner in which the test was performed are not disputed, therefore, the Court need only consider whether probable cause exited to believe that Plaintiff was driving while intoxicated.

As discussed above, Plaintiff led police officers on a high speed chase. During this chase Plaintiff was driving erratically. For example, Plaintiff crossed into oncoming traffic, forcing two cars of the road. He also ran a stop sign, ran a red light, and drove across a yard before crashing the pickup into a ditch. The officers noticed that Plaintiff was "dazed and disoriented and began screaming at the officers." (Def.'s Mot. Summ. J. at App. 3.) At the hospital, Plaintiff continued screaming and cursing at the hospital staff. Officer Wiley heard Plaintiff tell Officer Harbuck that Plaintiff had "shot up" methamphetamine three times since leaving Bosque County en route to Navarro County. (*Id.* at App. 3, 8–9.) Officer Andrews also heard Plaintiff tell the medical staff that they would have to insert a needle in another location because he had "collapsed most of his veins by shooting up narcotics for so long." (*Id.* at App. 6–7.) Clearly, probable cause existed for the police officers to believe that Plaintiff was driving while intoxicated.

### b. Excessive Force

Plaintiff also claims that during this incident, he was forcefully restrained. He also asserts that the officers sprayed him with mace. (Pl.'s Resp. Magistrate Judge's Supp. Questionnaire to Pl. at 4.) Plaintiff does not clearly allege that the police officers committed excessive force or that Defendant personally ordered the use of excessive force. However, because the Court construes pro

10

se plaintiff's briefs liberally, the Court considers whether excessive force was used.

While some use of force is acceptable when extracting a blood and urine specimen, it cannot be excessive. *See Hammer v. Gross*, 932 F.2d 842, 845 (9th Cir. 1991). To establish a prima facie case of excessive force under the Fourth Amendment, the plaintiff must show that he was seized, and as a result of that seizure he suffered "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 391 (5th Cir. 2004).

Plaintiff has not alleged that any injury resulted from the officers use of force to restrain him. Moreover, the amount of force used was objectively reasonable. While the officers and medical staff were attempting to put Plaintiff on the gurney to be transported to the hospital, Plaintiff attempted to hit and kick those who were assisting him. Officer Andrews put nylon restraints on Plaintiff for the safety of the medical staff, officers, and Plaintiff. Upon arriving at the hospital, Plaintiff was belligerent, cursing and screaming at the hospital staff. Plaintiff was, therefore, strapped to the gurney with leg cuffs. Given plaintiff's actions, the use of restraints was reasonable.

Plaintiff provides no support for his allegation that the officers used mace on him. There is no indication as to when this was used or in what context. The court need not consider conclusory assertions unsupported by facts. However, even if the Court accepted this as true, the officers use of mace would be reasonable given Plaintiff's violent actions of hitting and kicking those who were assisting him. Moreover, there is no allegation that Plaintiff suffered any injury as a result of the mace. Therefore, the Court does not find any use of excessive force.

**2. Clearly Established Right**

Even if Defendant violated Plaintiff's Fourth Amendment rights, he would still be immune from suit. In evaluating the second part of the qualified immunity test, the court looks to see if the right violated was clearly established at the time of the defendant's unlawful conduct. *Saucier*, 533 U.S. at 201. As the Supreme Court recognized in *Saucier*, "[t]his inquiry, it is vital to note, must be undertaken in light of the specific context of the case not as a broad general proposition." *Id.* Therefore, for a right to be clearly established, "[t]he contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Flores*, 381 F.3d at 399–400 (citing *Anderson*, 483 U.S. at 640). Accordingly, the law must give reasonable warning that the conduct at issue violates the plaintiff's constitutional rights. *Id.* at 400. An officer, therefore, who reasonably but mistakenly interprets the law is entitled to immunity. *Id.*

Plaintiff points to no authority that would put Defendant on notice that his actions in ordering the taking of a blood and urine sample violate the Fourth Amendment. Instead, as discussed above, the case law indicates that this is a proper method of seizing evidence for a person suspected of committing an intoxication offense. Likewise, Plaintiff points to no case law to suggest that the use of restraints or mace under these circumstances would be unreasonable. Therefore, Defendant, at most, reasonably, even if mistakenly, interpreted the law. Accordingly, Defendant is entitled to qualified immunity.

### B. Defendant's Supervisory Role

Plaintiff makes no allegation that Defendant was personally involved in losing Plaintiff's property. Therefore, in order for Defendant to be liable under § 1983, Plaintiff must show that there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). This causal connection exists when

12

the supervisory official implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Id.* (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169–70 (5th Cir. 1985)).

Plaintiff asserts that his property was confiscated and lost by the police department. In order for the deprivation of property to constitute a constitutional violation, the defendant's conduct must amount to more than mere negligence. *Rivers v. Graybill*, No. 3:06-CV-1128-D, 2008 WL 2548118, *5 (N.D. Tex. June 24, 2008) (Fitzwater, J.) Plaintiff has not alleged any intentional action by the police department, only the conclusory assertion that his property was lost. Therefore, Plaintiff has not shown that a constitutional violation has occurred.

Moreover, even if there was a constitutional violation, there is no evidence that an official policy is responsible for such a violation. The only evidence presented relating to this issue is Defendant's affidavit. He states that it is the policy of the Navarro County Sheriff's Departments to conduct an inventory of all property in an impounded vehicle. (Def.'s Mot. Summ. J. at App. 12.) The vehicle is then released to a private tow service. (*Id.*) There is no allegation that Defendant has implemented any deficient policy regarding impounding vehicles and inventorying property. Accordingly, Plaintiff has failed to show any causal connection between any wrongful conduct by Defendant and any constitutional violation.

**CONCLUSION**

Taking the evidence in the light most favorable to Plaintiff, he has failed to show that any personal action of Defendant caused any constitutional violation. Even if Defendant's personal actions did violate Plaintiff's rights, Defendant is protected by qualified immunity. Plaintiff also failed to show that Defendant is responsible for implementing a deficient policy that resulted in the

loss of Plaintiff's personal property. For these reasons, the Court recommends to the District Court that Defendant's Motion for Summary Judgment be **GRANTED**.

     **SO ORDERED**. July 23, 2008.

                                                PAUL D. STICKNEY
                                                UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).